635 So.2d 599 (1994)
Randy EGLIN, Plaintiff/Appellee,
v.
UNITED GAS PIPELINE, Defendant/Appellant.
No. 93-1179.
Court of Appeal of Louisiana, Third Circuit.
April 6, 1994.
Rehearing Denied May 19, 1994.
*600 Thomas Allen Filo, Lake Charles, for Randy Eglin.
Christopher Paul Ieyoub, Lake Charles, for United Gas Pipeline.
Before DOUCET and THIBODEAUX, JJ., and BERTRAND[*], J. Pro Tem.
LUCIEN C. BERTRAND, Jr., Judge Pro Tem.
United Gas Pipeline appeals a judgment ordering it to pay temporary total disability benefits, medical expenses, penalties and attorney's fees to its former employee, Randy Eglin. For the following reasons, we affirm.

FACTS
Randy Eglin, an 18 year employee of United Gas, injured his back while shoveling shells on October 24, 1991. Although he immediately reported the accident to his supervisor, Don Moyer, Eglin declined medical attention that day, a Thursday, stating that he preferred to see how things progressed over the weekend. On Monday, however, Eglin reported that he needed to see a doctor, and Moyer escorted him to the office of Dr. Roger Grimball, a family practitioner.
Dr. Grimball diagnosed Eglin's injury as a lumbar strain. He prescribed anti-inflammatory medication, muscle relaxants and three sessions of physical therapy administered in his office. On Friday, November 1, 1991, Eglin again saw Dr. Grimball, reporting that he was better but that he still experienced an occasional burn in the lower back. Dr. Grimball chose to release him at that time and gave Eglin a note stating that he could "return to work Monday," November 4, 1991.
When Eglin reported to work on Monday morning, he forgot his release slip from Dr. Grimball at his home. He was told to go home to get it and when he returned, he was assigned to work in the office while the remainder of his crew went to work in the yard. Later that morning, Eglin was told that his job had been eliminated due to a work force reduction.
Four days later, on November 7, 1991, Eglin was seen by his family practitioner, Dr. Roy Sasser. Eglin testified that because he was no longer working, he was uncertain as to whether he still had a workers' compensation claim. He therefore listed his own health insurer, rather than a compensation carrier, as a responsible party on Dr. Sasser's admitting forms. His chief complaints to Dr. Sasser were low back pain and radiating pain through the left leg. On the first visit, Dr. Sasser observed muscle spasm in the lumbar area and decreased range of motion. His diagnosis was mild to moderate lumbar strain. Although Dr. Sasser knew that Eglin was unemployed at that time, he *601 testified that the normal restrictions for this type of injury would have been no heavy lifting and no repeated stooping and straining.
Dr. Sasser then saw Eglin on a weekly basis through December 30, 1991, then twice in January of 1992, once in February of 1992, and once in May of 1992. By December 16, 1991, Dr. Sasser felt that Eglin had improved enough to begin a home exercise program. On December 30, 1991, Dr. Sasser noted that there was no spasm and full range of motion but that Eglin still complained of discomfort into his leg. On February 14, 1992, Dr. Sasser noted that Eglin still complained of back problems but that he was doing his exercises. His prescription for muscle relaxants was refilled at that visit. Eglin did not return to Dr. Sasser until May 15, 1992 at which time Dr. Sasser learned for the first time that Eglin had filed a workers' compensation claim. Dr. Sasser told Eglin that his back problems had been resolved since February.
Eglin was then referred by his attorney to Dr. Dean Moore, a neurosurgeon, who examined him on July 8, 1992. At this examination, Dr. Moore noted some tenderness, but no spasm, with moderate limited range of motion of the back on all planes. He also observed a positive straight leg raising test at 60°, weakness of the plantar flexion and reflexes that were "barely obtainable." Based upon his findings of tenderness, limited range of motion, positive straight leg raising and weakness in the foot, Dr. Moore suspected that Eglin had a herniated lumbar disk and recommended further diagnostic testing.
United Gas did not authorize the additional testing recommended by Dr. Moore. Instead, the defendant had Eglin examined by a neurosurgeon of its choosing, Dr. William Foster, on October 15, 1992. Dr. Foster observed that Eglin had full range of motion and no muscle atrophy. However, like Dr. Moore, Dr. Foster noted a positive straight leg raising test on the left at 60° and some tenderness on palpation. He believed that Eglin did not have a herniated disk. However, he stated that Eglin had suffered from a lumbar strain, with nerve root irritation, that should have resolved in six to nine months. He did not recommend further testing, although he had no objection to it, and he believed that Eglin should undergo some type of work-hardening program or short term rehabilitation before re-entering the work force.
United Gas paid the bills of Drs. Grimball and Sasser, but it never paid any disability benefits to Eglin. Terry Lewis, the claims representative in charge of Eglin's file, testified that because Dr. Grimball released Eglin within one week of the accident, Lewis considered the file to be a "no loss time" file in which only medical benefits were due. In February of 1992, Lewis received the bills from Dr. Sasser as well as a letter from Eglin's first attorney asking for compensation benefits. Although Lewis authorized the payment of Dr. Sasser's bills, he relied on Dr. Grimball's full release in November to deny the claim for compensation. He then turned the matter over to a local adjuster, who referred it to defense counsel in March of 1992.
At trial, United Gas attempted to prove that Eglin suffered a second accident that was not related to his employment. This defense was based in part on the testimony of Dr. Sasser, who stated in his deposition that Eglin reported that he was injured while "pulling up on some pilings," and upon the fact that Eglin listed his health insurer rather than a compensation carrier as the party responsible for payment. Eglin denied that he reported an accident history involving pilings to Dr. Sasser, and he explained that because his job was eliminated he was unsure which insurance company would be responsible for his bills.
The hearing officer rejected this defense, finding Eglin's explanations to be credible and supported by the evidence. The hearing officer found Eglin to be temporarily and totally disabled based upon the claimant's testimony and that of Dr. Moore, who stated that Eglin was in need of further diagnostic testing for a suspected herniated disk. Because United Gas failed to further investigate the claim after the receipt of Dr. Sasser's bills, the hearing officer also found the defendant *602 responsible for penalties and attorney's fees.

DISABILITY BENEFITS AND MEDICAL EXPENSES
United Gas first argues that the hearing officer erred in finding Eglin to be temporarily and totally disabled. The defendant contends that the hearing officer failed to give proper weight to the opinions of Drs. Sasser and Grimball and that the medical evidence does not support a finding of disability.
Effective January 1, 1990, a claimant must prove that he is physically unable to engage in any employment or self-employment by clear and convincing evidence before an award of temporary total disability can be made. La.R.S. 23:1221(1)(c). This statute, as amended in 1989, imposes a more stringent burden of proof on the claimant. However, the tenets of appellate review remain unchanged. The issue of disability is determined by the totality of the evidence, including both lay and medical testimony. Lemoine v. Schwegmann Giant Supermarkets, Inc., 607 So.2d 708 (La.App. 4th Cir.), writ denied, 609 So.2d 258 (La.1992). The trial court's determination of disability is a factual question which must not be disturbed unless manifestly erroneous. Fontenot v. T.L. James & Co., Inc., 563 So.2d 909 (La.App. 3d Cir.1990).
The hearing officer's finding of disability was based on the favorable assessment of the testimony of the claimant and of Dr. Moore. After reviewing the record, we can find no error in this determination. The only contradiction in the plaintiff's testimony identified by the defendant concerned the accident history as related to Dr. Sasser. Eglin denied telling Dr. Sasser that he had been "pulling up on some pilings." In his deposition, Dr. Sasser was reading from handwritten notes rather than a typewritten report. The plaintiff's attorney successfully showed that Dr. Sasser may have misread some of those notes. The hearing officer also viewed Dr. Sasser's notes and concluded that they were illegible.[1] Eglin also testified that he was unsure whether this claim was covered by workers' compensation because he was no longer employed. The hearing officer accepted this testimony based upon Eglin's 18 year service with the company during which time he had never filed another claim for compensation benefits.
We also find no error in the hearing officer's decision to rely on the testimony and report of Dr. Moore. The reports of Drs. Moore and Foster contain similar findings, namely, tenderness upon palpation and positive straight leg raising test at 60°. Dr. Moore suspected a herniated disk and recommended further testing. Although Dr. Foster did not suspect a disk problem, he stated that he had no objection to such testing. Dr. Foster also believed that Eglin had sustained a lumbar strain that lasted between six and nine months and was in need of work-hardening treatment before re-entering the work place.
United Gas objects to the hearing officer's characterization of Dr. Grimball as the "company doctor;" however, we find the evidence supports such a conclusion. Eglin's supervisor testified that he believed Dr. Grimball to be a company doctor, although he "wouldn't swear to it." Moyer also testified that he didn't even think an appointment was necessary for Eglin to see Dr. Grimball and that he spoke with the doctor about Eglin's case after the doctor had examined him. Other evidence in the record also supports the hearing officer's decision not to give much weight to Dr. Grimball's testimony. Even Dr. Foster testified that he would not have released a patient with a lumbar strain to full duty after only five days.
United Gas next argues that the hearing office erred in ordering it to pay for the *603 medical bills and testing ordered by Dr. Moore. Although the defendant is not required to pay the bills of physicians consulted for evaluation purposes, it is responsible for necessary expenses incurred in diagnosing the claimant's condition. Inasmuch as no other doctor investigated Eglin's complaints of radicular pain, we consider the services and testing ordered by Dr. Moore to be reimbursable.
Finally, United Gas contends that the hearing officer erred in awarding temporary total disability benefits in excess of six months because Eglin failed to submit an extension for the period of temporary total disability under La.R.S. 23:1221(1)(d). We disagree. That statute provides guidelines for the cessation of benefits; we find it is not applicable where benefits have never been paid.

PENALTIES AND ATTORNEY'S FEES
United Gas next argues error in the assessment of penalties and attorney's fees pursuant to La.R.S. 23:1201 E and 23:1201.2. Eglin has answered the appeal, seeking an increase in the award of attorney's fees for services performed on appeal.
The trial court's determination that an award of penalties and attorney's fees is based on a finding of fact and should not be disturbed unless it is clearly wrong. Lemoine, supra; Slate v. Travelers Ins. Co., 556 So.2d 903 (La.App. 3d Cir.1990). After reviewing the chronology of events in this case, we find no error in the hearing officer's award of penalties and attorney's fees.
The testimony of Terry Lewis shows that United Gas had in its possession a full release from Dr. Grimball dated November 1, 1991. However, in February of 1992 Lewis received the medical bills of Dr. Sasser for which he authorized payment. Although these bills were not accompanied by a medical report, they were clearly marked as services rendered for a "L/S strain." Lewis did write to Eglin's attorney asking for any additional information, but he apparently received no reply and forwarded the file to defense counsel. The only other medical information the defendant received was the report of Dr. Moore, dated July 8, 1992. We find that the receipt of this report, along with the medical bills of Dr. Sasser, should have triggered an immediate investigation into the status of this claim. However, the defendant's only response was to schedule an IME with Dr. Foster some three months later. Under these facts, we find no error in the award of penalties and attorney's fees. Compare with the facts of Slate, supra.
For the above reasons, the judgment of the trial court is affirmed, but amended to increase the award of attorney's fees by $1,000.00 for services performed on appeal. Costs of this appeal are assessed to defendant-appellant, United Gas Pipeline.
AFFIRMED AS AMENDED.
NOTES
[*] Judge Lucien C. Bertrand, Jr., Retired, participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.
[1] Defendant argues that Dr. Sasser's notes are hearsay and should not have been admitted into evidence. Even if the notes were erroneously admitted, we find the error was harmless. At least one page of the doctor's handwritten notes was stamped with his office seal, and we have no reason to doubt their authenticity. Further, the hearing officer's conclusion that Dr. Sasser may have misread his notes is a reasonable inference from some of the doctor's statements in his deposition.